Jones, J.
We hold that, if the requirements set forth in *221 subdivision 7 of section 70-a of the Executive Law are met, there need be no showing of "organized crime activity” to authorize the Deputy Attorney-General in charge of the Organized Crime Task Force to appear before a Grand Jury. We thus differentiate sharply from the showing prerequisite to the issuance of office subpoenas under subdivision 4 of section 70-a (Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227).*
The legislative findings disclose that the objective behind the enactment of section 70-a was to reach and combat organized crime activities. The means adopted was to establish a State-wide Organized Crime Task Force (OCTF) headed by a Deputy Attorney-General. The statute delineates the powers and authority of that official. For present purposes it suffices to note that his authority to appear before Grand Juries is set forth in subdivision 7: "7. With the approval of the governor and with the approval or upon the request of the appropriate district attorney, the deputy attorney general in charge of the organized crime task force, or one of his assistants, may attend in person any term of the county court or supreme court having appropriate jurisdiction, including an extraordinary special or trial term of the supreme court when one is appointed pursuant to section one hundred forty-nine of the judiciary law, or appear before the grand jury thereof, for the purpose of managing and conducting in such court or before such jury a criminal action or proceeding concerned with an offense where any conduct constituting or requisite to the completion of or in any other manner related to such offense occurred either in two or more counties of this state, or both within and outside this state. In such case, such deputy attorney general or his assistant so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform. In any of such actions or proceedings the district attorney shall *222 only exercise such powers and perform such duties as are required of him by such deputy attorney general.”
As Mr. Presiding Justice Marsh noted at the Appellate Division, that subdivision prescribes three conditions which must be met if the Deputy Attorney-General in charge of the OCTF is to appear before the Grand Jury: (1) the Governor must give his approval; (2) the appropriate District Attorney must request or approve such appearance; and (3) the Grand Jury proceeding must be concerned with multicounty or interstate conduct. In the present cases it is conceded that the first two or these three conditions precedent were satisfied. We agree with the majority at the Appellate Division that the third condition was satisfied as well.
The statute requires only that "any conduct * * * in any * * * manner related to [the] offense occurred * * * in two or more counties of this state” (§ 70-a, subd 7). The misappropriations which constitute the gravemen of the indictments occurred in Monroe County, where the housing project was located, in which each of appellants resided, and in which the corporate participants had their offices. The role played by Sack-man-Gilliland of Brooklyn, County of Kings, however, in making the construction loan to finance the housing project, although it did not form the basis for the indictments, constituted a sufficient other-county relation. The conduct occurring in the second county need not be that of an eventually indicted defendant, nor need it constitute or be requisite to the offense with which the Grand Jury is concerned; it is enough that it is related thereto "in any manner”.
Appellants would additionally have us erect a fourth prerequisite, namely, some showing that, in addition to constituting a multicounty or interstate offense, the presentments laid before the Grand Jury involve "organized crime activities”. We find no such requirement in subdivision 7. Indeed examination of the other portions of section 70-a suggests that in drafting the statute conscious care was taken to avoid the use of the phrase, "organized crime activities”, in subdivision 7. Unless mandated by provision of statute there is no general principle of law which would require identification of subject matter as prerequisite to Grand Jury appearance (again, contrast the different principle of law generally applicable to investigations by the Attorney-General, Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, supra). Once past the investigative stage (for which there must *223 be a showing of "organized crime activities”) prosecutorial authority is complete, provided, of course, in this instance that the three explicit conditions prescribed in the subdivision have been met.
That there need be no prerequisite showing of the focus of the Grand Jury presentments makes particularly good sense with respect to presentments by OCTF. Because of what must be conceded to be the practical difficulty of describing or defining precisely what is intended by the phrase, "organized crime activities”, it would appear naive at the least to make prosecutorial authority depend on the resolution of such a quicksilver issue, thereby in practice perhaps materially to handicap the prosecutorial efforts of the OCTF by spawning troublesome threshold issues whose resolution could be not only very difficult but also very time consuming and unpredictable. Experience was available from the Federal practice to alert our State’s Legislature to the practical complexities which any such requirement might entail. (McClellan, The Organized Crime Act [S 30] or Its Critics: Which Threatens Civil Liberties?, 46 Notre Dame Lawyer 55; Malone, The Problem of Categorizing and Controlling Organized Crime, 36 Albany L Rev 330.) Had it been the intention to mandate an element of organized crime activities as prerequisite to the exercise of the authority conferred in subdivision 7, one cannot think that our sophisticated draftsmen and legislators would not have had recourse to the effective procedural device of reliance on an official, nonreviewable, executive certification of the existence of such activities. (Cf. US Code, tit 18, § 3503, subd [a]; United States v Carter, 493 F2d 704; United States v Singleton, 460 F2d 1148.) Realism compels the observation that, however appropriate and useful it may be to require such an executive certification as a precondition to a transfer of responsibility within the executive branch from the normal prosecutor to a special prosecutor (compare the necessity under subdivision 7 for approval of the Governor and the local District Attorney), the executive certification mandated by the Federal statute is not an event of any practical significance or protection to a prospective defendant.
There being no general principle which calls for pre-presentment subject matter identification, we cannot read into subdivision 7 any such practical obstacle to the effective discharge of the prosecutorial function of the OCTF as would inescapably accompany the necessity to establish the presence of *224 organized crime activities. Particularly is this so when it is recognized that, without reference to section 70-a, the Governor is given authority to designate a Deputy Attorney-General as prosecutor superseding the local District Attorney under the provisions of subdivision 2 of section 63 of the Executive Law with full authority to appear before Grand Juries. (Cf., also, Executive Law, § 63, subd 10.) It is unrealistic to think that the Legislature, when under no necessity to do so, would have imposed a more cumbersome condition precedent with respect to the authority of the Deputy Attorney-General in charge of OCTF than would normally be the case.
Because we conclude that proof of "organized crime activities” is no prerequisite to the authority of the Deputy Attorney-General in charge of the OCTF to appear before the Grand Jury, we do not here reach the issue as to the constitutionality of section 70-a argued by appellant on the theory that the phrase "organized crime activities” is impermissibly vague. (But cf. Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, supra.)
The orders of the Appellate Division should be affirmed.

 It appears that in the course of the OCTF investigation which preceded the presentments to the Grand Jury in this case, the Deputy Attorney-General in charge of the OCTF made extensive use of office subpoenas, presumably under the authority of subdivision 4 of section 70-a. No objection was raised as to the authority for the issuance of such subpoenas by timely motion to quash or otherwise. Nor is any such issue tendered on this appeal. The only challenge now raised, and thus the only question we address in this case, is as to the authority of the Deputy Attorney-General in charge of the OCTF to appear before the Grand Jury in the circumstances disclosed in these records.