Jones, J.
We hold that under subdivision 4 of section 70-a of the Executive Law there must be a showing that the matters under investigation involve multicounty "organized crime activities” to authorize the issuance of office subpoenas by the Deputy Attorney-General in charge of the Organized *230 Crime Task Force, and that as so interpreted the statute is constitutional. In this respect we distinguish between the prerequisite to issuance of office subpoenas and the prerequisite to appearance by the Deputy Attorney-General before a Grand Jury. (Cf. People v Rallo, 39 NY2d 217.)
The State-wide Organized Crime Task Force (OCTF) was established by the enactment of section 70-a of the Executive Law. The authority and powers of the Deputy Attorney-General in charge of OCTF are delineated in the various subdivisions of the section. We have expressed our views with reference to certain aspects of his prosecutorial authority under subdivision 7 in People v Rallo (supra). We now address issues raised on this appeal with respect to his investigatory authority under subdivision 4. Analytically, subdivision 7 relates to the discharge of the responsibilities of the Deputy Attorney-General in an area of judicial cognizance, i.e., Grand Jury proceedings. Subdivision 4, on the other hand, relates to the discharge of his responsibilities in an area of executive cognizance—criminal investigation.
It is under subdivision 4 that the Deputy Attorney-General in charge of OCTF derives his authority to conduct hearings, to administer oaths, to subpoena and examine witnesses, and to compel the production of other evidence. These powers are conferred in furtherance and implementation of his fundamental authority and responsibility "to conduct investigations * * * of organized crime activities carried on either between two or more counties of this state or between this state and another jurisdiction” (subd 1). Unlike subdivision 7, subdivision 4 does not contain independently described conditions precedent to the exercise of the powers enumerated therein: "4. The deputy attorney general in charge of the organized crime task force is empowered to conduct hearings at any place within the state, to administer oaths or affirmations, subpoena witnesses, compel their attendance, examine them under oath or affirmation, and require the production of any books, records, documents or other evidence he may deem relevant or material to an investigation. He may designate an assistant to exercise any such powers. Every witness attending before such deputy attorney general or his assistant shall be examined privately and the particulars of such examination shall not be made public. If a person subpoenaed to attend upon such inquiry fails to obey the command of a subpoena without reasonable cause, or if a person in attendance upon *231 such inquiry shall, without reasonable cause, refuse to be sworn or to be examined or to answer a question or to produce a book or paper, when ordered so to do by the officer conducting such inquiry, he shall be guilty of a class A misdemean- or.”
At the threshold we observe that, aside from explicit statutory mandate, under general principles of law our court has traditionally required a subject matter identification, though not very demanding, as a precondition to the issuance of office subpoenas by the Attorney-General in the exercise of investigatory authority granted to his office by statute. Thus we have held that the Legislature may "not confer upon an executive an arbitrary and unbridled discretion as to the scope of his investigation. However broad the statutory language may be, the discretion must be exercised within bounds circumscribed by a reasonable relation to the subject-matter under investigation and to the public purpose to be achieved.” (Carlisle v Bennett; 268 NY 212, 217 [investigation of alleged security frauds under General Business Law, § 352]; also Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256-260 [investigation under the Consumer Protection Law of New York City]; Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, 918, cert den 395 US 959 [investigation as to unauthorized practice of law].) Thus, we do not attach the same significance to the absence in subdivision 4 of section 70-a of any explicit reference to the necessity for a showing of "organized crime activities” that we do to the corresponding absence in subdivision 7 authorizing appearance before the Grand Jury, with respect to which latter subject matter the underlying applicable law is quite different.
Nor is this historical distinction between office and Grand Jury investigations accidental. Consideration of the character of the powers to be exercised under subdivision 4 and the circumstances under which such powers will be exercised reveals the substantive differences. The authority to subpoena witnesses, the issue presented on this appeal, is illustrative. The subpoenas issued under subdivision 4 were nonjudicial, office subpoenas. The execution of such subpoenas and the examination of witnesses thereunder will not be under direct judicial supervision as, of course, would be the case with respect to subpoenas and testimony before the Grand Jury. The witnesses will not have the right to request promptly to *232 be taken before a Judge for judicial resolution of questions which may arise with respect to their examination, nor will they have the other procedural protections which attach when appearance is before a Grand Jury. The sanction for failure to obey the command of an office subpoena is conviction of a class A misdemeanor (subd 4). To provide a procedural means for the judicial resolution of legal issues which may rise during questioning it may thus be that the only recourse of the witness will be to invite and risk criminal prosecution. The option of moving to compel compliance under CPLR 2308 (subd [b]) lies with the Deputy Attorney-General. The more flexible and so much prompter procedures incident to contempt, to be had where the witness is summoned before the Grand Jury, will be unavailable in investigations conducted under the authority of subdivision 4.
Thus, balancing the interests of the Deputy Attorney-General to have sufficiently broad authority to enable him effectively to conduct investigations into organized crime activities, on the one hand, and, on the other, the interests of witnesses in their legitimate protection, it is entirely understandable that the Deputy Attorney-General should be required to make a preliminary showing that the purpose of his investigation is indeed inquiry into "organized crime activities”, and more particularly organized crime activities which are "carried on either between two or more counties of this state or between this state and another jurisdiction”.
It suffices for the disposition of the present appeal to note that here there was no preliminary showing whatsoever, either of multicounty crime or of organized crime. On the applications to quash the office subpoenas the Deputy Attorney-General was offered an opportunity and invited to submit proof on these issues. He chose rather, for the purpose we assume of obtaining an adjudication as to the scope of his subdivision 4 powers, to stand on his legal assertion that he was not required under the statute to make any showing that he was in fact proceeding with respect to multicounty organized crime activities.*
*233 We do not now delineate the precise quantum of proof with respect to multicounty or organized crime activities which will be required; it would be unwise for us to attempt to do so. The phrase "organized crime activities” is itself not susceptible of precise judicial definition. Factually, the circumstances in different cases may be expected to present different issues. It will serve now to observe that if the proof submitted by the Deputy Attorney-General in charge of OCTF establishes probable cause, as that standard has been developed elsewhere in the criminal law, there could be no doubt of his authority to proceed under subdivision 4. In our view, however, the proof need not go that far (cf. Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256-257, supra). The resolution in each instance must be left to the sound determination of the court or Judge before which or whom the issue is raised, subject, of course, to appropriate appellate review. The proof must establish that the Deputy Attorney-General is proceeding in good faith and that the testimony and documents he seeks bear a reasonable relationship to matters properly under OCTF’s investigatory jurisdiction, namely, "organized crime activities” which are also either multicounty or interstate. In passing we would observe that there may be instances, perhaps few in number, in which the delicacy of the particular investigation or the risk of and consequences attendant on premature disclosure may be such that it will be appropriate to employ specially limited, in camera, or even ex parte, procedures in which to receive the Deputy Attorney-General’s proof and to make the necessary judicial determination. In any such instance, however, a full record, perhaps sealed, should be preserved to permit informed appellate review.
Under the terms of the order of Supreme Court, affirmed at *234 the Appellate Division and now to be affirmed by us, OCTF will be afforded an opportunity to make the required showing to support the issuance of the office subpoenas in question. It is argued, however, that, because the phrase "organized crime activities” concededly is not susceptible of precise definition, the elusive character and vagueness of its content render subdivision 4 unconstitutional. Because an unarticulated holding of constitutionality which would be inferrable from our concurrence that OCTF should have another opportunity to submit the requisite proof of statutory compliance might leave lingering doubt, we now expressly confront and reject the challenge to constitutionality (cf. People v Pastore, 50 AD2d 1088; People v Rallo, 46 AD2d 518).
It is unquestioned that constitutional due process requires that a statute which defines a substantive crime must "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden” (Papachristou v City of Jacksonville, 405 US 156, 162; Lanzetta v New Jersey, 306 US 451, 458; People v Berck, 32 NY2d 567, 569). Section 70-a, however, does not fall within the category of statutes to which this constitutional principle is applicable. It is not the argument advanced here that to the extent that subdivision 4 proscribes conduct or contains a definition of a substantive criminal offense (i.e., that it makes [a] failure "to obey the command of a subpoena without reasonable cause”, or [b] refusal "to be sworn or to be examined or to answer a question or to produce a book or paper, when ordered to do so by the officer conducting such inquiry”, a class A misdemeanor), there is any constitutionally impermissible vagueness. Nor is any misdemeanor issue before our court on the present appeal. The argument focuses rather on an asserted vagueness as to the authority for the issuance of the subpoena. That issue can be tested, as here, by an appropriate proceeding to quash the subpoena, or in resisting a proceeding under CPLR 2308 (subd [b]) to compel compliance with the subpoena. Thus, a target or a witness may avoid being placed in jeopardy and obliged to dishonor an OCTF office subpoena at his peril.
If after investigation by OCTF a presentment is made to a Grand Jury such presentment and any subsequent charges will be concerned with specified substantive crimes each of which may be tested under the constitutional void-for-vagueness test. The concept of "organized crime activities” will then be irrelevant.
*235 By critical contrast to statutes in which there is asserted vagueness in the definition of substantive crimes, the aspect of subdivision 4 of section 70-a now under review relates only to the investigative authority and powers of a prosecutor. Our attention has been invited to no case in which a statute conferring investigative authority has been held unconstitutional on the ground that the scope of such authority has not been sufficiently precisely defined, nor have we found any. It would have been open to make an argument, much the same as that advanced here, with respect to asserted unconstitutional vagueness in several cases in which the authority to issue office subpoenas has been upheld (e.g., Matter of Sigety v Hynes 38 NY2d 260; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, supra; Matter of Di Brizzi [Proskauer] 303 NY 206; Carlisle v Bennett, 268 NY 212, supra). It may or may not be significant that the present contention appears not to have been raised in any of these cases.
The order of the Appellate Division should be affirmed.

 Prior to the issuance of the office subpoenas here, at the request of the District Attorney and with the approval of the Governor, a Grand Jury had been impanelled to investigate alleged fixing of horse races at the Monticello Raceway. It was incidental to the presentment of testimony before that Grand Jury that there came private disclosure to OCTF of purported instances of larceny, coercion, extortion and other crimes involving persons at Monticello Raceway. Such disclosure in turn led to *233 the issuance of the office subpoenas which are the subject matter of the present appeal. Even if the earlier approval of the Governor and request of the District Attorney were to be considered sufficient to meet two of the conditions expressly prescribed in subdivision 7 of section 70-a (a very questionable conclusion on the record presently before us) such circumstance could not be escalated into support for the issuance of the office subpoenas here, nor does the Deputy Attorney-General in charge of OCTF make any such claim. The statutory effect to be given participation of these two officials is limited to subdivision 7 only, relating to authority to appear before a Grand Jury. While authorizations of the Governor and of the appropriate District Attorney satisfy two of the three subdivision 7 conditions precedent, unlike the effect given executive certifications under the similar Federal statute (US Code, tit 18, § 3503, subd [a]), they do not thereby satisfy any requirement of a showing of "organized crime activities”, an element which we have held is not required for the exercise of subdivision 7 authority (People v Rallo, 39 NY2d 217, supra).