OPINION OF THE COURT
Robert G. Hurlbutt, J.
Each of the defendants, charged by the captioned indictment with the crime of conspiracy in the second degree, has moved, inter alia, for an inspection of the Grand Jury minutes and a dismissal of the indictment pursuant to CPL 210.20 (subd 1, par [b]). Defendant Osvaldo A. Pardo also seeks dismissal on the ground of alleged jurisdictional or legal impediment to conviction pursuant to CPL 210.20 (subd 1, par [h]).
The court has examined the Grand Jury minutes, and does not find it necessary to release any or all of the Grand Jury minutes to the parties (CPL 210.30, subd 3).
*773 The question before the court is whether the facts before the Grand Jury are sufficient to establish the offense charged or any lesser included offense. The test is whether the evidence, unexplained and uncontradicted, would warrant a conviction by a trial jury. (People v Leonardo, 89 AD2d 214, 217; People v Rallo, 46 AD2d 518, 527, affd 39 NY2d 217.) The evidence must be viewed in the light most favorable to the People. (People v Leonardo, supra; People v Sacco, 64 AD2d 324.)
The evidence presented to the Grand Jury demonstrates that during the period embraced by the indictment, viz., from March, 1981, through August, 1983, the defendant Edward A. Parker was a major supplier, or wholesaler, of cocaine, operating from his residence in the Town of Rem-sen. It appears that the defendant purchased and sold to various other drug dealers, or retailers, an average of four kilos per month, or over 100 pounds per year, of cocaine. The evidence further shows that for some substantial portion of that time period the defendant Pardo was the source, or a source, of Parker’s cocaine supply.
It was further demonstrated before the Grand Jury that the defendants Salvatore A. Inserra, Daniel E. Creaco, Jr., and John A. Baris were drug retailers, who did business with Parker on a prolonged and regular basis throughout the period of the alleged conspiracy, making regular periodic purchases of cocaine in amounts ranging from one-half pound to a “kilo” (2.2 pounds). The defendant Mary L. Entwistle was shown to have resided with Parker and to have participated in his illicit activities.
The indictment is drafted essentially as a recitation of section 105.15 of the Penal Law, alleging that the defendants “with the intent that conduct constituting the crime of criminal sale of a controlled substance in the first degree, a class A felony, be performed did agree with one or more persons to engage in and cause the performance of such conduct, to wit: knowingly and unlawfully selling one or more preparations, compounds, mixtures or substances of an aggregate weight of more than two (2) ounces containing a narcotic drug, to wit: cocaine.”
The District Attorney indicated in response to a bill of particulars demand that the “one or more persons” referred *774 to are, as to each defendant, his or her fellow defendants, and the court so construes the indictment.
While all of the defendants save Parker and Entwistle were shown to have had direct dealings with those two, there was no evidence to demonstrate any connection between, let alone direct agreement among, the defendants Pardo, Inserra, Creaco or Baris. To sustain the indictment, therefore, the People must rely on the theory of a “chain” conspiracy. The Federal courts have frequently sustained conspiracy convictions based on implied-in-fact agreements between parties who form various components of contraband trafficking, even though such parties are not actually or personally acquainted with one another. (See, e.g., Blumenthal v United States, 332 US 539, 556-557; United States v Cambindo Valencia, 609 F2d 603, 622-625; United States v Magnano, 543 F2d 431; United States v Mallah, 503 F2d 971; United States v Baxter, 492 F2d 150.) The rationale supporting conspiracy convictions based on such implied agreements is that “one who deals in large quantities of narcotics may be presumed to know that he is a part of a venture which extends beyond his individual participation” (United States v Magnano, supra, p 434). Thus, a large-scale supplier of narcotics knows that his customer-wholesaler will resell; and the retailer who buys from such wholesaler knows that the narcotics did not originate with that person. (United States v Bruno, 105 F2d 921, 922, revd on other grounds 308 US 287.) Likewise, although no direct connection is shown between retailers, they may still be found to be members of a single conspiracy “if each knew or had reason to know that other retailers were involved in a broad project for the importation, distribution, and retail sale of narcotics and had reason to believe that their own benefits derived from the operation were probably dependent upon the success of the entire venture. United States v. Baxter, 429 F.2d 150, 158 (9th Cir. 1973), cert, denied, 416 U.S. 940 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). The intermediate inference of knowledge is permissible if each retailer knows that the wholesaler or middleman handles a larger quantity of narcotics than one retailer can sell” (United States v Barnes, 604 F2d 121, 155; see, also, United States v Panebianco, 543 F2d *775 447, 453; United States v Steinberg, 525 F2d 1126, 1133; United States v Bynum, 485 F2d 490, 495-497; United States v Baxter, supra, p 158).
This court has found no New York appellate decisions either approving or disapproving such “chain” theory of conspiracy. The analysis was approved and applied to a stolen property “fencing” conspiracy by Justice Rothwax in People v Kiszenik (113 Misc 2d 462). And in People v Mineral Resources (114 Misc 2d 931), the court declined to employ the chain conspiracy theory because the product to be sold pursuant to the alleged conspiracy was one lawful to possess, and not contraband or a controlled substance.
There would appear to be no policy or precedential reason to prevent the People from proceeding here on the theory of a chain conspiracy. Although, unlike Federal law, conspiracy in New York is delineated under a separate section of the Penal Law, there appears to be no real difference in the respective legal definitions or applications of conspiracy. (Cf. Penal Law, § 105.15, with United States v Melchor-Lopez, 627 F2d 886, 890.) While the Federal rule is that in drug importation or distribution conspiracy prosecutions under sections 963 and 846 of title 21 of the United States Code, respectively, no proof of an overt act is required (United States v Knuckles, 581 F2d 305, 311), the other essential elements of an agreement to accomplish a criminal act and the requisite intent to commit such an act are the same. (Penal Law, art 105; United States v Melchor-Lopez, supra.)
In the instant case, the defendant Pardo sold large quantities of cocaine to Parker and, therefore, had to know or had reason to know that others would be making further purchases. Likewise, the circumstances in which Inserra, Creaco and Baris dealt with Parker as retailers, including the prolonged and regular course of dealing and the quantities in which they bought, readily permit the inference that they were aware not only that Parker had a substantial supplier at the opposite end of the “chain” from themselves, but also that there had to be other coconspirators at a level horizontal to them. (United States v Magnano, 543 F2d 431, 434, supra.) “It is well-settled that individual *776 customers and suppliers are members of one overall conspiracy if they are aware of the size of the middleman’s operations” (United States v Panebianco, supra, p 453). Certainly, the Grand Jury evidence would warrant a finding that the quantities and regularity involved in these retailers’ cocaine purchases from Parker were more than sufficient to make them aware of the existence of both a supplier to Parker and other purchasers at their level.
Upon the foregoing analysis, the evidence before the Grand Jury was sufficient as to each defendant to support a conviction for the offense charged. All motions to dismiss for insufficiency of evidence are, therefore, denied.
The motion of the defendant Pardo to dismiss by reason of jurisdictional or legal impediment is likewise denied.
The foregoing shall constitute the decision and order of this court, and it is further ordered that this decision shall be sealed by the clerk of the court, its contents not to be revealed by any person or party, until completion of trial or other disposition of this indictment as against all the defendants.