OPINION OF THE COURT
Con. G. Cholakis, J.
In an attempt to oversee the activities of lobbyists, the Legislature passed the Lobbying Act (L 1981, ch 1040). Pursuant to this act, lobbyists, with certain exceptions, are required to *449 register with the New York Temporary State Commission on Lobbying (hereafter commission) and also to provide various information concerning their activities. The required information includes the listing of “compensation paid or owed to the lobbyist, and any expenses expended, received or incurred by the lobbyist for the purpose of lobbying” (Lobbying Act, § 8, subd [b], par [5], cl [i]). This information is to be furnished by periodic reports to be filed by the lobbyist following specified reporting periods (Lobbying Act, § 8, subd [a]). The knowing and willful failure of any lobbyist to comply with this act (Lobbying Act, § 12, subd [a]), or the filing of false statements or reports (Lobbying Act, § 13, subd [a]), could subject him to criminal prosecution.
Except for processing a criminal prosecution, the commission is empowered to administer and enforce all the provisions of the Lobbying Act (§ 4, subd [c], par [1]). The commission is further “charged with the duty of reviewing all statements and reports required under this act for violations” (Lobbying Act, § 13, subd [c]; emphasis supplied).
In order to fulfill its statutory duty of overseeing lobbyists and reviewing statements and reports for violations, commission developed a procedure whereby the statements and reports of various lobbyists are selected for review. Since the commission does not have a sufficient staff to review all the statements and reports of all the lobbyists registered with it, it has adopted a procedure whereby the lobbyists whose statements and reports will be reviewed are randomly selected. Pursuant to this procedure, the statements and reports of lobbyist Goverl Consulting Corporation were chosen for review. Following its initial review, the commission requested additional information which the corporation failed to provide.
Upon the failure of the corporation to supply the requested information, commission issued a subpoena requiring the petitioners, the corporate lobbyist and its president, to appear before it and to produce certain records for 1982 (Lobbying Act, § 4, subd [c], par [2]). Petitioners now move to quash the subpoena and to prohibit the commission from issuing any further subpoenas to them, and respondent cross-moves to enforce its subpoena.
We shall first discuss petitioners’ request that respondent be prohibited from issuing any further subpoenas to them. Without discussing any principles of law or citing any authority, it seems clear that the court cannot anticipate what circumstances or conditions may exist in the future which might cause the com *450 mission to issue another subpoena to petitioners. Therefore, petitioners’ request to prohibit ommission from issuing any further subpoenas is denied.
Turning to petitioners’ motion to quash the present subpoena, it appears that they are relying on three separate grounds for their request:
(1) commission exceeded its authority;
(2) subpoena is oppressive; and
(3) subpoena requires the production of information not required on reports supplied to the commission.
We shall treat these items in inverse order.
Petitioners allege that the forms supplied by commission and which are used to file petitioners’ periodic reports do not require specific information for expenses of $50 or less whereas its subpoena does. While the court has not been supplied with a copy of the form reports used by lobbyists, it assumes that they comply with section 8 (subd [b], par [5], cl [ii]) of the Lobbying Act, which requires that all expenses of $50 or less shall be listed in the aggregate. Since the law so states, the commission surely cannot devise forms which compel a lobbyist to list all expenses, including minor ones, in detail. While the law and the forms do not require a detailed listing of these expenses, the commission cannot be precluded, in a proper case, from demanding justification and proof of them. What effect, if any, an inability to justify and prove these expenses may have, is not now before the court.
Petitioners also allege, in conclusory terms, that the subpoena is oppressive. They do not advise the court why the obtaining of the information is oppressive. Since the court has not been supplied with petitioners’ reports or given any information concerning the extent of petitioners’ records, the court has no way of knowing the volume of the items requested or the difficulty in procuring the same.
The court therefore concludes that these two arguments are insufficient to sustain petitioners’ motion to quash respondent’s subpoena.
The final basis for petitioners’ motion is that the respondent exceeded its authority.
We must therefore determine what it is that respondent seeks to accomplish. As stated earlier, the commission has a legislative mandate to review all filed statements and reports for violations and the filing of false statements and reports is a violation of the Lobbying Act. It appears uncontradicted that it *451 cannot physically review all reports filed with it and there has been no allegation that its method of random selection is unfair or inequitable.
It seems that most of the possible violations can be discovered by merely determining whether a report has been filed and, if it has, the date of its filing. The cursory review cannot, however, determine whether a filed report is false. Additional review or investigation is necessary. The commission could contact each source of income and expenditure listed by the lobbyist and request verification of the items listed on the lobbyist’s report or it could ask the lobbyist to supply verification. Asking the lobbyist to provide this verification is by far the more expedient method to the respondent and the less embarrassing method to a lobbyist.
Having decided which method it will follow, the respondent must now determine what it will do if a lobbyist, as in this case, refuses to voluntarily supply the requested information.
It can terminate its inquiry, thereby possibly allowing an uncooperative lobbyist to thwart the purposes of the Lobbying Act and possibly escape criminal prosecution; it can expend unavailable resources to, as stated earlier, check out each listed source of income and expenditure; or it can simply subpoena the lobbyist and demand verification of its reports. The latter method is the one chosen by respondent.
Respondent alleges that its power to issue subpoenas is found in section 4 (subd [c], par [2]) of the Lobbying Act:
“(c) * * * the commission shall have the power and duty to * * *
“(2) conduct any investigation necessary to carry out the provisions of this act. Pursuant to this power and duty, the commission may * * * subpoena witnesses, compel their attendance and require the production of any books or records which it may deem relevant or material”.
The type of subpoena which the commission is authorized to issue is to be distinguished from a judicial subpoena which is returnable before a Judge or Justice or a body under their control. The commission can only issue what it commonly called an office subpoena which is returnable before itself and the examination resulting thereby is not under judicial supervision.
“It is ancient law that no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered, especially with respect to subpoenas duces tecum * * * There must be authority, relevancy and *452 some basis for inquisitorial action”. (Matter of A’Hearn v Committee on Unlawful Practice of Law, 23 NY2d 916, 918.)
In this court’s judgment there is no doubt that the commission has the statutory authority to issue subpoenas (Lobbying Act, § 4, subd [c], par [2]) and further that the instant subpoena is relevant to the discharge of its duty to review petitioner Goverl Consulting Corporation’s reports (Lobbying Act, § 13, subd [c]).
The question to be decided is whether there is a basis for inquisitorial action. The cases seem clear that before respondent can issue office subpoenas, it must show its basis for inquisitorial action. (Matter of Levin v Murawski, 59 NY2d 35; Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250; Matter of A’Hearn v Committee on Unlawful Practice of Law, supra.) What is less clear is the extent to which it must go to show this basis.
The Court of Appeals has stated that there must be some factual basis for this action (Myerson v Lentini Bros. Moving & Stor. Co., supra, p 258) and this “required showing may amount to less than ‘probable cause’ to believe a violation of law will be disclosed * * * [n]or must the showing amount to a ‘forecast’ of the probable fruits of the subpoena” {supra, pp 256-257). The court later seemed to back away from the requirement of a factual showing and said that “[t]he proof must establish that the [respondent] is proceeding in good faith and that the testimony and documents * * * bear a reasonable relationship to matters properly under [respondent’s] investigatory jurisdiction” (Matter of Sussman v New York State Organized Crime Task Force, supra, p 233).
In a still later decision the court stated
“a minimum threshold foundation must be established to support the issuance of an office subpoena in an individual case * * *
“The requirement that there be prima facie proof of a justifiable basis for a good faith investigation * * * attaches to the issuance of an office subpoena * * * That the [respondent] is required to ‘investigate * * *’ does not serve to dispense with the necessity for such preliminary showing * * * To warrant the issuance of a subpoena in furtherance of an investigation * * * there must be a showing that there exists ‘some basis for inquisitorial action’ ” (Matter of Levin v Murawski, supra, pp 40-41).
While this last case was by a sharply divided court (4-3) it appears to be the last word on this question of proof regarding a basis for inquisitorial action.
*453 The sole basis for issuing its office subpoena in the instant case is the failure of petitioners to respond to respondent’s inquiry. There has been no inquiry made of other sources which might give credence to a belief that petitioners’ reports are false or inaccurate; there has been no showing that attempts to obtain this information from other sources have proven unsuccessful or would be unsuccessful; and finally, unfortunately, the statute does not place an affirmative duty upon the petitioners to voluntarily furnish the requested information to respondent.
In this court’s judgment, respondent has not met its burden of showing its basis for inquisitorial action and the motion to quash the subpoena is therefore granted.