In the Matter of JOHN DOE CORPORATION I et al., Appellants, v ALAN BLUMENKOPF, as Assistant Deputy Attorney-General in Charge of the New York State Organized Crime Task Force, et al., Respondents.

Third Department, July 17, 1986

**APPEARANCES OF COUNSEL**

*Obermaier, Morvillo & Abramowitz, P. C. (Robert G. Morvillo* of counsel), for appellants.

*Alan Blumenkopf, Assistant Deputy Attorney-General,* respondent *pro se.*

**OPINION OF THE COURT**

LEVINE, J.

Petitioners are two Schenectady-based corporations against whom respondent Organized Crime Task Force (Task Force) is now presenting evidence to a Schenectady County Grand Jury, apparently regarding alleged misappropriation of trade secrets from the General Electric Company and commercial bribery. In May 1985, the Task Force applied for and was granted search warrants by a County Judge for various specifically identified articles at petitioners' premises, which were seized upon execution of the warrants. In August and September 1985, the Task Force obtained records of petitioners' bank accounts through the issuance of office subpoenas duces tecum

*(see,* Executive Law § 70-a [4]), directed to a local office of Manufacturers Hanover, N. A. In this proceeding, petitioners seek a writ of prohibition to prevent the Task Force from submitting to the Grand Jury all or any part of the foregoing evidence in its possession on the ground that the evidence was obtained by means beyond the legal authority of the Task Force under the statute that created it and defines its powers *(see,* Executive Law § 70-a). They appeal from Special Term's dismissal of their petition.

Petitioners concede that respondent Assistant Deputy Attorney-General of the Task Force in charge of this matter may validly appear before and present evidence to the Grand Jury under Executive Law § 70-a (7), since both the Governor and the District Attorney have approved such action, and the alleged offenses concern multicounty or interstate conduct *(see, People v Rallo,* 39 NY2d 217, 222). Petitioners contend, however, that such legal authority does not extend to the evidence-gathering activities involved here. Relying on the Court of Appeals decision in *Matter of Sussman v New York State Organized Crime Task Force* (39 NY2d 227), they argue that in obtaining that evidence, the Task Force was exercising its statutory investigative powers under Executive Law § 70-a (4), rather than its prosecutorial powers under Executive Law § 70-a (7), in which case the Task Force was required to show that the object of the investigation involved "multicounty 'organized crime activities' " *(Matter of Sussman v New York State Organized Crime Task Force, supra,* p 229; *see,* Executive Law § 70-a [4]). Since the Task Force made no showing whatsoever that the misappropriation of trade secrets or commercial bribery under investigation constituted organized crime activities in the common meaning of that phrase, petitioners urge that the Task Force's acquisition of the evidence was illegal and that it should therefore be prohibited from using the evidence before the Grand Jury.

■ ■ The judgment should be affirmed. In reaching this conclusion, we need not determine (1) whether dismissal could properly have been based on the sufficiency of the showing by the Task Force that its investigation concerned organized crime activities, or (2) that Special Term's finding, that petitioners' alleged offenses could "easily reach the level of organized crime", was either adequate or supported by the record without recourse to in camera inspection of the letters of authorization from the Governor and the District Attorney in

this matter or of the search warrant applications, all as offered by the Task Force in its answer to the petition.

■ Regarding the bank records obtained through the office subpoenas duces tecum, unquestionably, the only authority for the issuance of the subpoenas by the Task Force is to be found in Executive Law § 70-a (4). The case of *Matter of Sussman v New York State Organized Crime Task Force (supra)* expressly ruled that the exercise of the office subpoena power is conditional upon a showing of the relationship of an investigation to organized crime activities *(supra,* at pp 229-230). The case law is equally clear, however, that petitioners have no legally cognizable interest in the records of a third-party bank and, hence, they lack standing to complain of any illegality in subpoenaing them *(see, United States v Miller,* 425 US 435, 444; *Matter of Cappetta,* 42 NY2d 1066, 1067; *Matter of Laborers I.U.N.A. Local No. 333 v New York State Organized Crime Task Force,* 81 AD2d 1037, 1038; *Matter of Democratic County Comm. v Nadjari,* 52 AD2d 70, 72).

■ As to the seizure of evidence under the search warrants, we are of the view that the Task Force was validly acting within its powers under Executive Law § 70-a (7). The applications for the warrants were made after the Task Force received approval to proceed in this matter from the Governor and the District Attorney. The petition alleges that the evidence thereby obtained is being submitted to the Grand Jury. It is thus readily inferable, and petitioners have not submitted proof to the contrary, that the purpose of the seizure was to assemble the necessary proof and otherwise to prepare for presentation of the case against petitioners to the Grand Jury. Pointing to the distinction made in *Sussman (supra)* between the Task Force's investigative powers under Executive Law § 70-a (4) and its prosecutorial power under Executive Law § 70-a (7) to "attend in person any term of the county court or supreme court * * * or appear before the grand jury thereof", petitioners argue, in substance, that only in actually attending before the Grand Jury or in court is the Task Force functioning as a prosecutor and that every extrajudicial activity in connection therewith is necessarily investigative. We believe that petitioners read too broadly the dichotomy in *Sussman* between the Task Force's investigative and prosecutorial functions.

Executive Law § 70-a (7) expressly provides that, in exercising the prosecutorial role in court or Grand Jury proceedings, the Deputy Attorney-General in charge of the Task Force "so

attending shall exercise all the powers and perform all the duties * * * which the district attorney would otherwise be authorized or required to exercise or perform". It takes no sophisticated knowledge of the prosecutorial function to be aware that such role in presenting a case to a Grand Jury cannot effectively be performed without gathering and sifting evidence, e.g., interviewing and taking statements from potential witnesses, before actually formally submitting such evidence to that body. It should also be noted that, traditionally and constitutionally, the Grand Jury is an investigatory as well as an accusatory body *(Matter of Stern v Morgenthau,* 62 NY2d 331, 336; *Matter of Dwyer v Wilcox,* 92 AD2d 646).

Moreover, despite the fact that the District Attorney's statutory duties are entirely prosecutorial (County Law § 700), it has also been held that in investigating and marshaling evidence for purposes of presentation to a Grand Jury, the District Attorney is performing duties "intimately associated with the judicial phase of the criminal process, and were performed by the prosecutor in a quasi-judicial capacity" *(Brenner v County of Rockland,* 67 AD2d 901, *lv denied* 47 NY2d 705; *see also, Whitmore v City of New York,* 80 AD2d 638, 639, *appeal dismissed* 54 NY2d 753). The power to investigate incidental to the prospective initiation of criminal proceedings has been expressly ruled to be subsumed within the prosecutorial duties of the District Attorney *(Matter of Shumer v Holtzman,* 60 NY2d 46, 53). In furtherance of his prosecutorial responsibilities, the District Attorney is authorized to apply in his own right for a search warrant (CPL 690.05 [1]), precisely the action challenged here.

The *Sussman* case *(supra)* does not hold to the contrary. There, the court was distinguishing between the discharge of the Task Force's Deputy Attorney-General's quasi-judicial, prosecutorial responsibilities under Executive Law § 70-a (7), and the "discharge of his responsibilities in an area of *executive* cognizance—criminal investigation" under Executive Law § 70-a (4) *(Matter of Sussman v New York State Organized Crime Task Force, supra,* p 230; emphasis supplied). In outlining the latter, *executive* investigative functions, Executive Law § 70-a (4) confers independent powers far beyond those normally afforded a District Attorney, e.g., the authority to hold hearings, subpoena records and examine witnesses under oath, all separate and apart from any judicial proceedings. *Sussman* merely holds that the exercise of such extraordinary, executive powers by the Task Force under Executive Law § 70-a (4)

is conditional on its being involved in an investigation of organized crime activities. That the Court of Appeals in *Sussman* did not intend to restrict the exercise by the Task Force under Executive Law § 70-a (7) of the incidental, evidence-gathering, prosecutorial functions of the District Attorney is best demonstrated by the court's decision in *Matter of B.T. Prods. v Barr* (44 NY2d 226), where the court stated that, once the statutorily required approvals by the Governor and the District Attorney have been obtained, "the Task Force is given the authority of the District Attorney, which would presumably include the power to obtain a search warrant in the course of preparing the authorized prosecution" *(supra,* at p 235).

Since there was no submission whatsoever by petitioners that the search warrants were not obtained for the genuine purpose of gathering evidence in preparation for the formal presentation of charges before the Grand Jury as authorized by the Governor and the District Attorney in this matter, the evidence thereby obtained by the Task Force may not be challenged in this proceeding. Accordingly, Special Term's dismissal of the petition was proper in all respects.

MAHONEY, P. J., KANE, CASEY and MIKOLL, JJ., concur.

Judgment affirmed, with costs.