OPINION OF THE COURT
Peter L. Broderick, J.
The defendant has made a motion requesting this court to review the sufficiency of the grand jury minutes pursuant to sections 210.20 and 210.30 of the Criminal Procedure Law.
The question before this court is whether the facts before the grand jury are sufficient to establish the offenses charged or any lesser-included offenses. The test is whether the evidence, unexplained and uncontradicted, would warrant a conviction by a trial jury.
Upon a review of the grand jury minutes, the evidence presented is sufficient to support count two of the indictment (charging criminal possession of a controlled substance in the seventh degree for constructive possession of psilocin). The motion to dismiss or reduce this count is denied.
Count one of the indictment charges the class C felony of criminal possession of marihuana in the first degree (for the alleged constructive possession of nearly 19 pounds of marihuana).
A review of the grand jury minutes, together with the exhibits introduced into evidence before that body, demonstrates to this court that the Cheektowaga police attempted to follow an evi *262 dentiary trail obtained from a confidential informant. That trail led to one Charles McGill here in Niagara County. The Cheektowaga authorities then coordinated with the Niagara County Drug Task Force and obtained a series of court warrants, including one authorizing the search of McGill’s automobile and person. While executing that warrant, sitting in the passenger front seat of McGill’s automobile, they discovered this defendant, Andrew Renaud. There is no indication in the grand jury presentation that the authorities in either jurisdiction had ever before heard of Andrew Renaud, nor is there any evidence to suggest that Andrew Renaud had any criminal history of drug use or trafficking.
Upon searching the occupants and the vehicle, the police discovered no controlled substances on either person, but found a considerable quantity otherwise in the vehicle. On the backseat was a duffle bag containing approximately 17 pounds of marihuana. On the floor in the backseat area was another bag containing approximately two additional pounds of marihuana. In the front seat, on the floor in the passenger side (where Renaud was sitting), they discovered a yellow backpack containing a small quantity of marihuana, the psilocin, and a “metal grinding iron.”
Andrew Renaud made no admissions to any police officer. McGill, on the other hand, talked freely with the police and, ultimately, crafted a cooperation agreement with the authorities in exchange for lenient treatment. McGill indicated that Andrew’s brother, Brian Renaud, was the apparent mastermind of the conspiracy. Brian was trying to get a delivery (the 17 pounds) to his coconspirator in Pittsburgh, a third brother named Tim Renaud. Andrew was supposed to make the delivery, but was experiencing car problems. While McGill (a long-time family friend) was visiting with Andrew, Brian scolded Andrew and advised him to see if McGill could provide the transportation. McGill contended that the brothers Renaud told him of the plot and he agreed to act as the wheelman for the delivery, in exchange for a small piece of the marihuana (the two pounds on the backseat floor) and approximately $500 in cash. McGill testified that Brian loaded the duffle bags of marihuana into his car and he and Andrew were in the process of leaving Western New York when the police stopped them.
During the initial grand jury presentation, the prosecution did not call McGill to testify. Instead, they chose to indict based solely upon the statutory presumption of possession attribut *263 able to all persons present in an automobile found in Penal Law § 220.25 (1). The defense moved to dismiss that indictment, contending both that the prosecution completely failed to charge the presumption to the grand jury and that the presumption does not legally apply to marihuana. While the court was in the process of considering these arguments, the prosecution represented the matter and obtained a superseding indictment under CPL 200.80. That new indictment rendered the initial indictment subject to mandatory dismissal (see, Matter of Gold v McShane, 74 AD2d 616 [2d Dept 1980]; People v Sinistaj, 67 NY2d 236 [1986]). This, in turn, rendered the pending motion moot, obviating the need for a decision by this court.
Upon receipt of the new indictment, the defendant made a second motion against the sufficiency of the presentation. This time he argues that McGill’s testimony does not supply proof that the defendant knowingly possessed the marihuana, a requisite element of the charged crime. He also contends that the presentation failed to corroborate the testimony of McGill, who is an accomplice as a matter of law.
In response, the prosecution claimed that the grand jury testimony of the defendant’s mother, Barbara Renaud, and of Police Officer Charles Baker, adequately corroborated the accomplice.
There are a series of issues presented for this court’s consideration. Each of them, itemized below, will be treated in course. The issues are:
1. Does the statutory automobile presumption apply to marihuana?
2. Must the prosecutor charge that presumption to the grand jury in order to derive any benefit from its rule?
3. Is a codefendant/accomplice’s testimony in the grand jury sufficient to withstand a CPL 210.20 attack?
4. Must such accomplice testimony before the grand jury be corroborated?
5. If so, was it corroborated in this case?
1. Does the Statutory Automobile Presumption Apply to Marihuana
The statute reads, in relevant part:
“220.25 Criminal possession of a controlled substance; presumption
“1. The presence of a controlled substance in an automobile ... is presumptive evidence of knowing possession thereof by *264 each and every person in the automobile at the time such controlled substance was found . . .
As William Donnino’s Practice Commentaries (McKinney’s Cons Laws of NY, Book 39, Penal Law § 220.25, at 91) state, this “statute applies the presumption to all controlled substances, not simply narcotic drugs.” (Emphasis added.) The 1972 Interim Report of the Temporary State Commission to Evaluate the Drug Laws (Controlled Substances, Dangerous Unless Used as Directed, 1972 NY Legis Doc No. 10) expressed the logic of the presumption as follows:
“We do not believe that persons transporting dealership quantities of contraband are likely to go driving around with innocent friends or that they are likely to pick up strangers. We do not doubt that this can and does in fact occasionally happen, but because we find it more reasonable to believe that the bare presence in the vehicle is culpable, we think it reasonable to presume culpability in the direction which the proven facts already point.”
Case law appears to suggest the applicability of the presumption to marihuana (cf., Matter of Boyd v Constantine, 81 NY2d 189 [1993]; People v Bennett, 47 AD2d 322 [1st Dept 1975]). Marihuana is clearly a controlled substance as defined by statute (Penal Law § 220.00 [5]; Public Health Law § 3306 [schedule I] [d] [13]; and see, People v Kinnicut, 83 Misc 2d 229 [Allegany County Ct 1975]; Matter of Taylor v Poole, 301 AD2d 712 [3d Dept 2003]).
The argument to the contrary lies in the wording of Penal Law § 220.00 (5). This provision defines “controlled substance” as any substance listed in schedule I of Public Health Law § 3306 “other than marihuana.” While, at first blush, this appears to rule out marihuana from the definition, this court believes that a more careful reading suggests differently.
Penal Law § 220.25 (1), as mentioned, contains the automobile presumption. While it uses the term “controlled substance,” it does not itself directly include or exclude marihuana from that definition. Subdivision (2), however, clearly suggests that the Legislature included marihuana in their definition of controlled substances for that section dealing with presumptions when they say: “The presence of a narcotic drug, narcotic preparation, marihuana or phencyclidine” in a room “is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such *265 controlled substance was found.” (Emphasis added.) This court believes that this seeming inconsistency is explained by understanding that the Legislature excluded marihuana from the definition of controlled substance for penalty purposes (viewing marihuana as worthy of less serious penalty), but included marihuana in the definition of controlled substance for evidentiary purposes (see, People v Morehouse, 80 Misc 2d 406 [1975]; People v Warren, 79 Misc 2d 777 [1974]). That is to say, the definition flexes to accommodate the very different purposes of the two sections. Recognizing this, the Legislature specifically said, in Public Health Law § 3306 (schedule I) (d): “Unless specifically excepted” hallucinogenic substances that are considered to be “controlled substances” include marihuana. Penal Law § 220.25 does not exclude marihuana from the definition of controlled substance for the automobile presumption purposes and, as previously observed, expressly implies its inclusion.
For these reasons, I hold that the statutory automobile presumption (rebuttable and permissive as it is) does apply to marihuana in the same manner as it applies to any other controlled substance.
2. Must the Prosecutor Charge That Presumption to the Grand Jury in Order to Derive Any Benefit from Its Rule
Although no case was offered or found directly addressing this point, this court believes that in the ordinary situation the prosecution will be required to present — and always should present — a charge concerning the presumption in order for the grand jury to be able to utilize it in reaching their determination. (Cf., CPL 190.30 [7].) It is perfectly clear that whenever the prosecution does charge the presumption, such charge must include an indication that the presumption is permissive and rebuttable (see, People v Hester, 133 AD2d 302 [1st Dept 1987]; People v Williams, 136 AD2d 132 [2d Dept 1988]).
In rare instances, however, the facts of a given situation may present such a compelling circumstantial inference that the failure of the prosecution to charge the statutory presumption will not eliminate the ability of the grand jury to rely upon the commonsense presumption that the statute embraces. (See, People v Eisen, 25 NY2d 1005 [1969]; People v Hyde, 302 AD2d 101 [1st Dept 2003].)
In the present case, the marihuana found in the backseat of the car is not so directly and obviously tied to either one of the front seat occupants as to forgive the failure to specifically charge upon the statutory presumption. In the absence of such *266 a charge, the grand jury would not be authorized to ground a possession upon the presumption.
The results pertaining to the contraband discovered in the yellow backpack lying directly at defendant Renaud’s feet are different. That material was in such proximity to Renaud as to permit the grand jury to reasonably infer — without the necessity of the statutory presumption charge being given — that they were his belongings. That other, innocent inferences could possibly be drawn from these facts is irrelevant as long as the grand jury could rationally have drawn the guilty inference (People v Deegan, 69 NY2d 976 [1987]). While it may be that the People will have a long road to travel to convince a petit jury of defendant’s guilt without additional evidence, this court’s inquiry is limited to legal sufficiency. It is not the function of a reviewing court to examine the adequacy of the proof to establish reasonable cause since that inquiry is exclusively the province of the grand jury (People v Cedeno, 252 AD2d 307 [1st Dept 1999]).
The answer, then, to this issue is in two parts. The failure of the prosecution to specifically charge the grand jury regarding the automobile presumption with respect to the 19 pounds of marihuana discovered in the backseat area is fatal. Not having charged the presumption, the People may not rely upon it to sustain the sufficiency of the proof presented to the grand jury on count one.
The failure to charge the presumption is not, however, fatal to the grand jury’s ability to determine — as they obviously did— that the marihuana and psilocin located in the yellow backpack lying directly at defendant Renaud’s feet belonged to him.
3. Is a Codefendant/Accomplice’s Testimony in the Grand Jury Sufficient to Withstand a CPL 210.20 Attack
The proper standard for reviewing the sufficiency of the evidence to support an indictment is “legal sufficiency,” which is defined in CPL 70.10 (1) as “competent evidence which, if accepted as true, would establish every element of an offense charged.” (People v Swamp, 84 NY2d 725 [1995]; People v Jennings, 69 NY2d 103 [1986].) In the context of grand jury matters, legally sufficient means prima facie, not proof beyond a reasonable doubt. (People v Mayo, 36 NY2d 1002 [1975].) The evidence must be viewed in the light most favorable to the People. (People v Manini, 79 NY2d 561 [1992]; People v Pelchat, 62 NY2d 97 [1984]; People v Crossley, 168 AD2d 930 [4th Dept 1990]; People v Parker, 124 Misc 2d 772 [Oneida County Ct *267 1984]; also see People v Franklin, 305 AD2d 613 [2d Dept 2003]; People v Mikuszewski, 73 NY2d 407 [1989]; People v Warner-Lambert Co., 51 NY2d 295 [1980], cert denied 450 US 1031 [1981].)
The defendant correctly maintains that proof of his “mere presence” in the car alone does not constitute a prima facie case (People v Simon, 2 Misc 3d 1002[A], 2003 NY Slip Op 51691[U] [Crim Ct, NY County 2003]; People v Brown, 240 AD2d 675 [2d Dept 1997]; People v Wynn, 177 AD2d 1016 [4th Dept 1991]). In this case, however, the grand jury received evidence beyond “mere presence.” They heard the testimony of the accomplice, McGill.
McGill testified that Andrew Renaud was charged, as his role in a marihuana selling conspiracy, with the task of delivering this load of marihuana to yet a third brother participating in the criminal enterprise, Tim Renaud in Pittsburgh. Brother Brian Renaud issued that order. Brian yelled at Andrew (who whined that his truck was in the shop and he couldn’t get to Pittsburgh) and ultimately told him to get McGill to provide the wheels. Andrew is the one who directly told McGill about the plan and asked McGill to provide the transportation to deliver the marihuana to Tim. The discussed plan with Andrew was that McGill would be paid $500 or $600 to make the run with Andrew, plus he would get 2 of the nearly 19 pounds of marihuana being transported. McGill was going to remain silent, until he heard Andrew telling the police that none of the stuff in the vehicle was his. As McGill testified:
“Well, when he got pulled over Andy kept saying none of it was his, which made me kind of angry because I’ve known this kid and he’s trying to twist it and blame it on me and it wasn’t even mine. Two of it was mine and I knew that, but for him to say none of it was his. So I was like fine, I’ll tell them where it came from.”
This evidence far transcends “mere presence.” (Cf., People v Crossley, 168 AD2d 930 [4th Dept 1990].)
4. Must Such Accomplice Testimony Before the Grand Jury be Corroborated
The problem is that McGill, as a matter of law, is an accomplice. GPL 210.20 (1) (b) permits the defense to move for a dismissal of the indictment when the evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser-included offense. GPL 70.10 (1) defines “legally *268 sufficient evidence” as competent evidence that, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof, “except that such evidence is not legally sufficient when corroboration required by law is absent.”
In the context of the authority for a grand jury to indict, “reasonable cause” must be based upon “competent and admissible evidence” and must include requisite corroboration (CPL 190.65 [1]). In the context of a motion to dismiss an indictment, the sufficiency of the People’s presentation is properly determined by inquiring whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury (People v Franklin, 305 AD2d 613 [2d Dept 2003]). A petit jury would be precluded from convicting defendant Renaud based solely upon the uncorroborated testimony of his accomplice (CPL 60.22 [1]).
For all of these reasons, it is clear that the prosecution may not rely upon accomplice McGill’s testimony to sustain this indictment unless they presented sufficient legal corroboration evidence to the grand jury.
5. Was It Corroborated in This Case
Acknowledging this requirement, the prosecution claims that they did present such corroboration in the testimony of two witnesses: the defendant’s mother, Barbara Renaud, and a narcotics officer named Charles Baker. This court believes that contention is in error.
CPL 60.22 (1) provides that “[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.”
Ordinarily, the trier of fact is solely responsible for determining the credibility of witnesses. However, the law looks askance at certain witnesses and, in order to insure fairness to the accused, requires that their testimony be supported by other proof if a conviction is to be had. This corroboration requirement exists to further considerations of public policy, and the amount of corroboration to be required varies with the policy sought to be served by the requirement. (People v Daniels, 37 NY2d 624 [1975].) That is to say that there are different kinds of corroboration requirements in the law.
For example, until recently, a defendant could not be convicted of most sexual offenses solely on the uncorroborated testimony *269 of the alleged victim. It was necessary to produce additional proof, beyond the testimony of the complainant, that a sexual act had occurred, that the act was criminal in nature, and that the defendant was the person who committed the crime. (People v Daniels, 37 NY2d 624 [1975].)
At the opposite end of the scale is the requirement that a defendant cannot be convicted solely upon his own confession or admission. It is necessary for the prosecution to come forward with additional proof that the offense charged has been committed. The purpose of this rule is to guard against the possibility that a defendant might be convicted and jailed for a crime that never occurred. However, the policy behind the statute is satisfied by the production of some proof, of whatever weight, that a crime was committed by someone. (People v Daniels, 37 NY2d 624 [1975].)
The corroboration requirement with respect to the testimony of accomplices occupies a middle ground. The rule is that the required corroborative evidence must tend to connect the defendant with the commission of the offense. This rule recognizes that accomplices may themselves be persons of disrepute, lacking the normal indicia of reliability. Moreover, as it is with McGill, the accomplice may have purchased a reduced exposure to criminal liability by promising to implicate others. Thus, the purpose of this aspect of the rule is to be sure that the facts, even matters that in themselves may be of seeming indifference, so harmonize with the accomplice’s narrative as to have a tendency to furnish the necessary connection between the defendant and the crime. It is not necessary to exclude to a moral certainty every hypothesis but that of wrongdoing. All that is necessary is to connect the defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice is telling the truth. (People v Daniels, 37 NY2d 624 [1975].)
Turning to the question of what is sufficient corroboration, a review of the cases will quickly reveal that, if the corroborative evidence is truly independent of the accomplice’s testimony, it need not be substantial (People v Breland, 83 NY2d 286 [1994]; People v Spencer, 272 AD2d 682 [3d Dept 2000]; People v Giguere, 261 AD2d 941 [4th Dept 1999]; People v Hudson, 51 NY2d 233 [1980]). The corroboration must, however, be truly independent and may not draw its probative value from the accomplice testimony in any manner (People v Konigsberg, 137 AD2d 142 [3d Dept 1988]). Corroborative evidence is sufficient if it connects the defendant with the crime in such a way that *270 the jury may be reasonably satisfied that the accomplice is telling the truth. The corroborative glue does not require independent proof of the elements of the crime to sustain a conviction; it just has to bind the accomplice evidence to the defendant. (People v Giguere, 261 AD2d 941 [4th Dept 1999].)
Although evidence was presented to this grand jury corroborating the testimony of the accomplice that he was in a car on the way to Pittsburgh with Andrew Renaud (both Barbara Renaud and Charles Baker support this information to one degree or another), no evidence from an independent source was introduced tending to connect the defendant to the backseat marihuana (see, People v McGrath, 262 AD2d 1043 [4th Dept 1999]).
It is not enough to create suspicion or to merely confirm the general credibility of the accomplice as distinguished from confirming the accomplice in such a way as to tend to connect the defendant with the commission of the crime (People v London, 5 Misc 2d 976 [Ct Gen Sess 1957]; People v Willard, 159 App Div 19 [3d Dept 1913]). Upon this presentation, the only way such a connection can be established is by resort to McGill’s testimony. Only he says that the backseat marihuana belongs to Andrew Renaud. Only he mentions the three-brother conspiracy and the immediate objective of delivering marihuana to Pittsburgh. Only he says that he agreed to supply the transportation in exchange for two pounds of the product and $500. Reliance may not, to any extent — let alone to this extent — be placed upon testimony of the accomplice to connect the defendant to the crime for to do so would be to rely on a bootstrap and eliminate the corroboration rule entirely (People v Hudson, 51 NY2d 233 [1980]; People v Rosica, 199 AD2d 773 [3d Dept 1993]).
Barbara Renaud’s testimony does not mention marihuana or any criminal activity whatsoever. It is not the type of corroboration intended by the statute (unlike that presented in such cases as People v Martinez, 266 AD2d 847 [4th Dept 1999] or People v Holmes, 304 AD2d 1043 [3d Dept 2003]).
Nor does Officer Baker’s testimony connect defendant Renaud to the backseat marihuana (see, People v Dingle, 70 Misc 2d 840 [Sup Ct, NY County 1972]; People v Lanza, 57 NY2d 807 [1982]; People v Lanza, 83 AD2d 714 [3d Dept 1981]; People v Brown, 240 AD2d 675 [2d Dept 1997]; People v Simon, 2 Misc 3d 1002[A], 2003 NY Slip Op 51691[U] [Crim Ct, NY County 2003]; People v Wynn, 177 AD2d 1016 [4th Dept 1991]). Andrew *271 Renaud made no admissions (cf., People v Kestler, 201 AD2d 955 [4th Dept 1994]; People v Soto, 115 Misc 2d 415 [Westchester County Ct 1982]). He did not flee from the scene (cf., People v Chamberlain, 38 AD2d 306 [4th Dept 1972]; People v Wynn, 177 AD2d 1016 [4th Dept 1991]), or otherwise engage in conduct connecting himself to the crime as reported by any nonaccomplice witness (see, People v Linkhorn, 184 AD2d 927 [3d Dept 1992]; People v Conklin, 139 AD2d 156 [3d Dept 1988]; People v Johnson, 188 AD2d 552 [2d Dept 1992]; People v Crossley, 168 AD2d 930 [4th Dept 1990]).
In short, nothing connects Andrew Renaud to the backseat marihuana in this presentation but for accomplice McGill’s testimony.
For the above reasons, upon review of the grand jury minutes, count one of the indictment is dismissed and count two is sustained.