OPINION OF THE COURT
James H. Boomer, J.
The defendant moves for partial summary judgment dismissing two causes of action. The complaint alleges three causes of action arising out of statements made by an officer of the defendant bank to the effect that the plaintiff Graney had failed to repay a loan from the bank when due. The statements were made to officers of another bank and to an owner who intended to sell property on credit to the plaintiff. As a result of those statements, the other bank refused the plaintiff credit and the owner of the property refused to sell.
The complaint proceeds upon three separate theories, slander, breach of an implied agreement that the bank would not disclose information about plaintiff’s financial affairs, and negligent use of language. Conceding that plaintiff has set forth facts sufficient to state a cause of action for slander, the defendants move to dismiss the causes of action for breach of an implied agreement of confidentiality and for negligent use of language.
NEGLIGENT USE OF LANGUAGE
At early common law there was no cause of action for "negligence in word as distinguished from act.” (International Prods. Co. v Erie R. R. Co., 244 NY 331, 336.) An exception to this general rule is made in most American States. "In some cases a negligent statement may be the basis for a recovery of damages.” (International Prods. Co. v Erie R. R. Co., supra, p 337.) Those cases arise where a person to whom a duty is owed and to whom the statement is communicated relies upon the statement to his injury (International Prods. Co. v Erie R. R. Co., supra; Courteen Seed Co. v Hong Kong & Shanghai Banking Corp., 245 NY 377).
Here the negligent statement was not made to the plaintiff, but it was made to a third person and it was not the plaintiff who relied upon it, but that third person. No case has been found applying the theory of negligent language in such a situation. A plaintiff who has been injured by language communicated by the defendant to a third party may have a remedy in defamation, intentional inducement of breach of *766 contract, or disparagement of property or business (Prosser, Torts [4th ed], §§ 128-130, pp 915-969). Each of these torts has its distinctive principles. To allow recovery, in such a case, based upon negligent use of language would extend the doctrine of negligent representation beyond its present bounds and would make "all these principles and distinctions, so nicely wrought and formulated * * * a waste of time and effort.” (Ultramares Corp. v Touche, 255 NY 170, 186.)
If the doctrine of negligent misrepresentation can apply to this case where slander is also a remedy, the elements of the tort of slander will be radically changed. As an example, the doctrine of qualified privilege will be abolished.
An employer is privileged to make a statement about his employee to a person who is considering hiring that employee. And the employer will not be held liable if the statement is derogatory and untrue unless spoken with malice (Fowles v Bowen, 30 NY 20; Browne v Prudden Winslow Co., 195 App Div 419). Officers of a labor union also have a qualified privilege when speaking to the members of the union about their president (De Carlo v Catalfano, 42 AD2d 823). So does a deacon of a church when speaking to other church members about the honesty of the minister (Pendleton v Hawkins, 11 App Div 602), and a merchant when imparting to another merchant credit information about a customer (Ormsby v Douglass, 37 NY 477, 484). If negligence, rather than malice, becomes the predicate for liability, these qualified privileges will be lost.
The doctrine of negligent use of language should be confined within its present bounds where a misrepresentation is negligently communicated to one who relies upon it to his damage. It should not be extended to the instance presented here. Summary judgment is granted, therefore, dismissing the cause of action for negligent use of language.
BREACH OF IMPLIED AGREEMENT OF CONFIDENTIALITY
For its cause of action for breach of an implied contract not to disclose information, the plaintiff cites Peterson v Idaho First Nat. Bank (83 Idaho 578, Ann., 92 ALR2d 891.) A later case following Peterson is Milohnich v First Nat. Bank of Miami Springs (224 So 2d 759 [Fla]). In Peterson (supra), the court held that the relationship of a bank to its depositors is more than that of debtor and creditor; it is also that of agent and principal (citing Crawford v West Side Bank, 100 NY 50). *767 As an agent has a duty not to reveal information confidentially given to him by his principal, so has a bank, as agent, the duty not to reveal information confidentially given to it by its depositors. The court stated (83 Idaho 578, 588, supra):
"It is inconceivable that a bank would at any time consider itself at liberty to disclose the intimate details of its depositors’ accounts * * *
"It is implicit in the contract of the bank with its customer or depositor that no information may be disclosed by the bank or its employees concerning the customer’s or depositor’s account, and that, unless authorized by law or by the customer or depositor, the bank must be held liable for breach of the implied contract.”
In Milohnich (supra), it was held that a depositor had a cause of action for breach of implied contract against a bank that divulged information about his bank accounts. The court found that there was a general banking policy of nondisclosure of depositor’s accounts and that it was an implied term of the banking contract that the bank would treat as confidential information about the depositor’s account. The court quoted from Tournier v National Provincial & Union Bank (1 K B 461, 480 [1924]), the leading English case on this subject: "The Court will only imply terms which must necessarily have been in the contemplation of the parties in making the contract. Applying this principle to such knowledge of life as a judge is allowed to have, I have no doubt that it is an implied term of the banker’s contract with his customer that the banker shall not disclose the account, or transactions relating thereto, of this customer except in certain circumstances.”
As further authority for this implied duty of a bank with regard to depositor’s account, see Corpus Juris Secundum, Banks and Banking (vol 9, § 271, p 555): "[a] depositor has * * * a proprietary right in the information contained [in his bank records] relative to the state of his account sufficient to place the bank under an implied duty to keep such records secret as a general rule.” Brex v Smith (104 NJ Eq 386, 390), cited in Corpus Juris Secundum, holds: "It may be that the relation of a bank to its depositors is that of debtor and creditor, but I think it is more than that. As far as money actually deposited is concerned, that is true. But as to the records of the accounts, the deposits and withdrawals, that is another matter. There is an implied obligation, as I see it, on the bank, to keep these from scrutiny until compelled by a *768 court of competent jurisdiction to do otherwise.” (See, also, 7 CJS Banks and Banking, § 320, p 639: "The condition of a depositor’s account is not to be disclosed to third persons, save for reasonable cause, as where required by order of court in some controversy where the state of a depositor’s account becomes material.”) There is a reasonable expectation that a bank will treat as confidential any information about a depositor’s account. The information contained in the records of depositors’ accounts concerns primarily the records of transactions between the depositor and third parties; and the bank in participating in those transactions acts as the agent for the depositor. Since these affairs between the depositor and third parties are generally no concern of the bank, it is natural that the depositor and the bank would regard them as information a bank would not disclose to others.
In this case, however, the information revealed by the bank did not concern the plaintiff’s deposit with the bank; it concerned a loan made by the bank. As to that loan, the relation between the bank and the plaintiff was solely that of creditor and debtor. The information the bank imparted about the state of plaintiff’s loan was not information it received in its capacity as agent for a depositor; it was information it obtained as a party to the loan agreement. It was not information that the borrower would normally expect would be kept confidential. One who defaults on his debts owed to a merchant cannot expect that his default will be kept a secret. While a creditor, who publishes his debtor’s defaults to the public at large may be liable for breach of privacy (Prosser, Laws of Torts [4th ed], § 117, pp 809-810, citing Brents v Morgan, 221 Ky 765), he will not be liable (in the absence of malice) if he divulges the default not to the public at large, but privately to selected individuals (Ornsby v Douglass, 37 NY 477, 484, supra).[1] The bank, in its capacity as lender, is in no different position than that of any other lender or creditor. I see no basis, therefore, for implying an agreement of confidentiality to the relations of a bank with its borrowers. The *769 cause of action based upon a breach of an implied contract of confidentiality is, therefore, dismissed.

. "[Merchants have an interest in knowing,- and have a right to know, the character of their dealers and those who prepare to deal with them, and of those upon whose standing and responsibility they, in the course of their business, have occasion to rely. As a necessary consequence, they may make inquiries of other merchants, or any person who may have information, and if such merchant, or other person, in good faith, communicates the information which he has, or thinks he has, the communication is privileged.”