In the Matter of DAVID NORKIN et al., Respondents, v PATRICK T. HOEY, as First Deputy Commissioner of the Department of Investigation of the City of New York, et al., Appellants, et al., Respondent.

First Department, June 25, 1992

**APPEARANCES OF COUNSEL**

*Alan G. Krams* of counsel *(Fay Leoussis* and *Barry P. Schwartz* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for appellants.

*Davidoff & Malito* for respondent.

**OPINION OF THE COURT**

ELLERIN, J.

The issue before us is whether petitioners-respondents, David Norkin and Britestarr Homes, Inc. (Britestarr), may challenge a subpoena duces tecum served upon Lloyd's Bank PLC (Lloyd's) for production of bank records relating to a loan made by Lloyd's to Britestarr, a New York corporation of which Norkin is the president and sole stockholder.

A subpoena duces tecum was served upon Lloyd's in the context of an investigation conducted by the Department of Investigation of the City of New York (DOI) of the City's Department of Sanitation regarding its issuance of a permit for, and inspection and oversight of, a waste facility owned by Britestarr. While the petition seeking to quash the subpoena was originally brought solely by Norkin individually, it was thereafter amended to include the corporation, Britestarr, as an additional petitioner.

The subpoena involved specifically requested production of:

"Documents described below, relative to Mortgage made on or about September 7, 1988 for premises located at Oak Point Railroad Yard * * * Mortgagor-Britestarr Homes, Inc.

"1) Copies of application and supporting documents submitted by the mortgagor and/or its president, David Norkin, including but not limited to any and all statements pertaining to the planned use of the premises as a dump site for landfill and/or for the receipt, processing and recycling of solid waste materials, and any statements pertaining to anticipated income and operating expenses for any such activities, and any statements pertaining to Federal, State and municipal government permits and regulation of such activities.

"2) Copies of any and all financial statements and statements of cash flow provided by or on behalf of the mortgagor, including but not limited to, statements required of the mortgagor pursuant to Article 16 of the mortgage."

In moving to quash, petitioner Norkin characterized the subpoena as one seeking his personal or private financial records and he argued that the absence of a factual showing by respondent of the relevance of the requested documents to a DOI investigation required that the subpoena be quashed.

In his reply papers, Norkin indicated that he did not object

to the subpoena to the extent it sought the mortgage application, provided all financial data was redacted, and he also conceded that any statements made by petitioners to Lloyd's when they applied for the mortgage and which "pertain[ed] to the planned use of Oak Point as a dump site for landfill", could properly be turned over, as well as "any statements in Lloyd's possession pertaining to Federal, State and municipal government permits and regulation of such activities." He continued to vigorously assert, however, that the financial information sought was wholly irrelevant to DOI's investigation and should not be turned over.

The trial court ruled that petitioners had standing to challenge the subpoena, relying upon the decision in *Matter of Goldberg v Axelrod* (104 AD2d 520, *lv denied* 64 NY2d 602) and the fact that petitioners were the only parties with an interest in challenging the agency's exercise of its subpoena power. Having found standing, the trial court considered the issue of relevance and, upon concluding that respondent DOI had not shown the necessary relevance with respect to the contested financial information, quashed so much of the subpoena as sought such information. The instant appeal by DOI followed.

The threshold issue, of course, is whether petitioners have standing, at all, to challenge the subpoena in issue. Absent standing, the issue of relevance raised by petitioners is never reached.

Any analysis of standing with respect to subpoenaed bank records must begin with the seminal case of *United States v Miller* (425 US 435, 440, 442), in which the Supreme Court held that bank records of a customer's accounts are "the business records of the banks" in which the customer "can assert neither ownership nor possession" and that the customer has no legitimate "expectation of privacy" in the contents of original checks, deposit slips or other documents voluntarily conveyed to banks and exposed to their employees. The court further found that no Fourth Amendment interests of the depositor are implicated when a subpoena is issued to a third-party bank to obtain the records of the depositor and that the issuance of such a subpoena does not violate a defendant's rights even if a criminal prosecution is contemplated at the time the subpoena is issued.

In the wake of the Supreme Court's holding in *Miller (supra),* and in order to avoid the untenable consequences

which could ensue if banks were entitled to release their customers' financial records to anyone who sought them, a number of States, as well as the Federal Government, enacted statutes providing for a limited right to financial privacy *(see, e.g.,* 12 USC § 3401 *et seq.;* Con Gen Stat § 36-9j *et seq.;* Md Code Annot, Fin Inst § 1-302 *et seq.).* Moreover, even in the absence of specific statutory authority, numerous courts have found, in various contexts, that bank customers are not without a protectable interest in such records *(see generally, Young v United States Dept. of Justice,* 882 F2d 633, 642-643, *cert denied* 493 US 1072; Annotation, *Bank's Liability, Under State Law, for Disclosing Financial Information Concerning Depositor or Customer,* 81 ALR4th 377). Indeed, the American Bankers Association counsels its members that customer information should generally be kept confidential and acknowledges that most customers assume that their banking information is private *(see, Young v United States Dept. of Justice, supra,* at 643).

The Legislature of this State has not acted to provide for any privacy rights in such records, and our courts have, in the main, followed *United States v Miller (supra),* in holding that bank customers have no proprietary interest in the records kept by the banks with which they do business, the records being the property of the bank, and that bank customers do not have a sufficient expectation of privacy in such records to confer upon them the standing necessary to challenge a subpoena seeking those records on the grounds that it violates their constitutional privileges against unreasonable searches and seizures *(see, e.g., Matter of Cappetta,* 42 NY2d 1066; *Matter of Congregation B'Nai Jonah v Kuriansky,* 172 AD2d 35; *People v Doe,* 96 AD2d 1018, 1019; *Matter of Shapiro v Chase Manhattan Bank,* 53 AD2d 542; *Matter of Democratic County Comm. v Nadjari,* 52 AD2d 70).

In most instances the motion to quash has arisen in the context of a subpoena issued in conjunction with a Grand Jury investigation and the challenge has implicated the constitutional provisions which in *United States v Miller (supra)* the Supreme Court held were not violated by issuance of a subpoena to a third-party bank. In *Miller (supra,* at 443-444), the court expressly stated:

"The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. *United States* v. *White,* 401 U. S. 745, 751-752 (1971). This Court has held repeatedly that the Fourth

Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed * * *

"Since no Fourth Amendment interests of the depositor are implicated here, this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued."

Notwithstanding the refusal of our courts to entertain challenges to subpoenas issued to third-party banks in conjunction with Grand Jury investigations on the grounds set forth in *Miller (supra)* there has been some decisional departure on the issue of standing regarding traditional bank accounts in the context of a civil proceeding. The most notable is the decision in *Matter of Goldberg v Axelrod* (104 AD2d 520, *lv denied* 64 NY2d 602, *supra),* relied upon by the trial court, in which the court was confronted with an office subpoena issued by the Commissioner of Health during the investigatory stage of a proceeding pursuant to provisions of the Public Health Law. The Third Department was obviously troubled by the untoward consequences which could ensue from denying a bank customer standing to challenge such third-party office subpoena issued by an administrative agency which, in distinction to a subpoena directing appearance before a Grand Jury, is neither under direct judicial supervision nor cloaked with the procedural protections inherent in judicial subpoenas. *(See, Matter of Sussman v New York State Organized Crime Task Force,* 39 NY2d 227, for extensive discussion on the distinctions between office subpoenas and Grand Jury subpoenas.)* In recognition of the absence of judicial supervision over office subpoenas, and mindful of the realities of a third-party bank's disinterest in challenging a subpoena seeking records of a customer's account, the Third Department used a procedural basis for finding that when a motion to quash an office subpoena seeking a customer's bank records is brought pursuant to CPLR 2304, the issue of the customer's standing is not governed by the holdings in the aforenoted cases where the challenges to the subpoenas were based on alleged violations of constitutional rights but, rather, by application of the "zone of interest" test set forth in *Matter of Dairylea Coop. v Walker* (38 NY2d 6), i.e., that "[p]etitioner 'need only show that the

administrative action will in fact have a harmful effect' on him and that the interest advanced is arguably within the zone of interest to be protected by the statute" *(Matter of Goldberg v Axelrod, supra,* at 520). In concluding that the petitioner before it met the necessary criteria to warrant standing under that test, the court cautioned that: "To hold otherwise would allow an administrative agency to exercise subpoena power unchecked by judicial review since a non-party witness, standing neither to gain nor lose, would have no incentive to move to quash" *(supra,* at 521).

Despite the very valid concerns articulated by the court in *Matter of Goldberg v Axelrod (supra),* its resolution of the standing issue in favor of the bank customer does not appear to have been followed elsewhere, even by the Third Department itself. Thus, in *Matter of Doe Corp. I v Blumenkopf* (118 AD2d 279, 282), which dealt with an identical challenge to an administrative agency's third-party office subpoena seeking petitioner's bank records, that court, while implicitly acknowledging the necessity for relevance as a condition of the exercise of office subpoena power, nevertheless precluded such a challenge by the petitioner bank customer, holding that: "The case law is equally clear, however, that petitioners have no legally cognizable interest in the records of a third-party bank and, hence, they lack standing to complain of any illegality in subpoenaing them *(see, United States v Miller,* 425 US 435, 444; *Matter of Cappetta,* 42 NY2d 1066, 1067; *Matter of Laborers I.U.N.A. Local No. 333 v New York State Organized Crime Task Force,* 81 AD2d 1037, 1038; *Matter of Democratic County Comm. v Nadjari,* 52 AD2d 70, 72)." The omission of its own decision in *Matter of Goldberg v Axelrod* from the authorities relied upon is not without significance.

While, as indicated, the overwhelming weight of authority in this State holds that a bank customer is without standing to challenge a third-party subpoena, particularly where incidental to a government entity's investigatory activities as is here the case, it must be noted that there have been some manifestations of an underlying discomfort with the facial unfairness of depriving a bank customer of any recourse, including standing, for disclosure of financial information concerning the customer's personal bank accounts which are widely believed to be confidential. Thus, while this court in *People v Doe (supra,* 96 AD2d 1018), consistent with *United States v Miller (supra)* and its progeny, found that the petitioner had no standing to move to quash the Grand Jury

subpoena for his bank records, Mr. Justice Kassal in his concurring memorandum *(supra,* at 1019) took the opposite view. Cogently arguing that only the petitioner depositor had any real interest in the records of his accounts, while "the bank has no real motivation to challenge the disclosure of financial records of its depositor since production would only affect its customer, not the bank", Justice Kassal found that the depositor had standing, even in the context of a Grand Jury subpoena, to challenge the production of the bank records on the ground of relevance *(supra,* at 1019). More recently, this court in *Siskin v 221 Sullivan St. Realty Corp.* (162 AD2d 356), while not directly reaching the issue because it was not properly preserved for appellate review, intimated that in a wholly civil context involving private litigants the standing issue could be resolved in favor of the customer whose bank accounts are being sought by way of subpoena.

Legislative action setting appropriate parameters, as has been the case in other jurisdictions, would, of course, most satisfactorily resolve the sensitive issues implicated in this area, but in the absence of such action, there has been some effort to explore other potential avenues of recourse. In *Young v United States Dept. of Justice (supra,* 882 F2d 633, 640-644) the Second Circuit discussed at length the ramifications of a possible breach-of-confidence tort cause of action in banking relationships. As was noted by that court, "at least one New York court demonstrated a willingness to extend the cause of action to this area" *(supra,* at 643, citing *Graney Dev. Corp. v Taksen,* 92 Misc 2d 764, 767-768, *affd* 66 AD2d 1008 [4th Dept]). Parenthetically, it may be observed that recognition of such a cause of action would undoubtedly, albeit indirectly, serve as a catalyst for banks to meaningfully challenge, when appropriate, subpoenas seeking their depositors' bank records.

While we are not here confronted with an action against the bank for a claimed breach of an alleged implied contract not to disclose information regarding its customer, as was the case in *Graney Dev. Corp. v Taksen (supra)* the decision in that case is helpful in distinguishing the characteristics incidental to various types of banking transactions. The motion court in *Graney* differentiated between a bank's relationship to a depositor who maintains a traditional bank account and its relationship to a customer to whom it has extended a loan. As to the former, the court, relying upon various texts and out-of-State precedents, concluded that since information contained in the records of a depositor's account concerns primarily

records of transactions between the depositor and third parties, for which the bank acts as agent for the depositor, it is natural that the depositor and bank would regard it as information which "a bank would not disclose to others" *(supra,* at 768). As was noted in *Young (supra),* there is a clear indication in the court's discussion that the release by a bank to others of information regarding a depositor's account could constitute a breach of an implied contract of confidentiality existing between bank and depositor. With respect to the records of a loan made by the bank to a customer, however, the court found that since the relationship between the two would be solely that of creditor and debtor, it would not be information that the borrower would normally expect would be confidential.

While petitioners here have consistently couched their argument in terms of the subpoena at issue seeking their personal or private bank records, the implication being that the records are those ordinarily maintained in the course of the traditional depositor-bank relationship, in fact, the subpoena seeks only records required to be submitted to the bank in conjunction with the loan made to petitioners. We must agree with the court in *Graney (supra),* that whatever expectations of confidentiality may inhere in the traditional relationship between bank and depositor, such expectations are wholly lacking in the context of the debtor-creditor loan relationship and, consequently, petitioners would not be able to claim any recongizable confidentiality interest in such records even under the most liberal authorities in this State.

While there may be circumstances where a bank customer will be able to demonstrate that there existed such a relationship of confidentiality between the customer and the bank that the customer should be construed as having a sufficient interest in the records of his or her accounts to warrant standing to challenge a subpoena to the bank for the production of those records, petitioners here have fallen far short of any showing that would provide grounds for departing from the controlling authorities with respect to standing.

Accordingly, we find that petitioners have no standing to challenge the relevance of the subpoena served upon Lloyd's, and, since Lloyd's itself has raised no objections to complying, there is no basis upon which to limit production of the information sought by the subpoena as was done by the trial court and we reverse the order to the extent appealed from.

Order, Supreme Court, New York County (Shirley Fingerhood, J.), entered October 3, 1990, which granted the motion of petitioners-respondents Norkin and Britestarr Homes, Inc., to quash a subpoena issued by respondents-appellants Patrick Hoey and the Department of Investigation of the City of New York upon respondent Lloyd's Bank PLC, to the extent of excepting from such subpoena, and directing that Lloyd's Bank PLC not produce, information concerning the finances of petitioners-respondents, unanimously reversed, insofar as appealed from, on the law, and the motion denied, without costs.

KUPFERMAN J. (concurring in result only). I agree with my colleague Justice Kassal, as set forth in his concurring memorandum in *People v Doe* (96 AD2d 1018, 1019).

The bank has no real interest in the question of disclosure of these financial records while the depositor has. Clearly, there should be standing and any determination to the contrary is pure fiction.

Nonetheless, I concur because it cannot be said that the subpoena is too broad or that the financial records sought are not relevant.

SULLIVAN, J. P., and MILONAS, J., concur with ELLERIN, J.; KUPFERMAN, J., concurs in a separate opinion.

Order, Supreme Court, New York County, entered October 3, 1990, which granted the motion of petitioners-respondents Norkin and Britestarr Homes, Inc., to quash a subpoena issued by respondents-appellants Patrick Hoey and the Department of Investigation of the City of New York upon respondent Lloyd's Bank PLC, to the extent of excepting from such subpoena, and directing that Lloyd's Bank PLC not produce, information concerning the finances of petitioners-respondents, unanimously reversed, insofar as appealed from, on the law, and the motion denied, without costs.