OPINION OF THE COURT
George B. Ceresia, Jr., J.
In 1993 and 1994, respondent Attorney-General received numerous complaints from consumers and public bodies concerning allegedly unauthorized substitutions of petitioner On-cor Communications, Inc. (Oncor) as the primary long distance carrier and operator service provider on certain telephone lines.[1] As a result, the Attorney-General undertook an investigation of Oncor’s business practices, and on June 22, 1994, issued an office subpoena duces tecum to Oncor’s competitor, respondent American Telephone & Telegraph Company (AT&T). Oncor thereafter brought this proceeding, moving pursuant to CPLR 2304 for an order quashing the subpoena. The Attorney-General opposes.[2]
The law in New York is settled. "An application to quash a subpoena should be granted '[o]nly where the futility of the process to uncover anything legitimate is inevitable or obvious,’ or where the information sought is 'utterly irrelevant to any * * * proper inquiry’ ” (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 331-332 [1988] [citations omitted]). Although the *264 burden is on the issuer of a nonjudicial office subpoena to establish a factual basis showing the relevancy of the items sought (Matter of Congregation B’Nai Jonah v Kuriansky, 172 AD2d 35, 37 [3d Dept 1991] [quoting Virag v Hynes, 54 NY2d 437, 442 (1981)]), "the Attorney-General enjoys a presumption that he is acting in good faith * * * and must show only that the materials sought bear 'a reasonable relation to the subject matter under investigation and to the public purpose to be achieved’ ” (Anheuser-Busch, Inc. v Abrams, supra, at 332 [citations omitted]). Concisely, the Attorney-General’s "obligation is to show his authority, the relevancy of the items sought, and some factual basis for the inquisitorial action” (Matter of Pharmaceutical Socy. v Abrams, 132 AD2d 129, 133 [3d Dept 1987]).
The Attorney-General’s subpoena requires AT&T to produce two categories of documents:
"1. a copy of all documents received by AT&T from January 1, 1993 to date indicating that a telephone line in New York State has had its primary interexchange carrier ('PIC’) changed to Oncor Communications, Inc., ('ONCOR’) without authorization by the subscriber to that line;
"2. a copy of all documents received by AT&T from January 1, 1993 to date from subscribers to telephone lines in New York State requesting a PIC change from Oncor to AT&T.”
Oncor plainly has no standing to challenge production of documents in the second category. That material is limited to documents received by AT&T from subscribers. Nor may Oncor attempt to quash the subpoena with respect to those documents in the first category that are not its property nor otherwise subject to a valid claim of privilege. A subpoena may be challenged "by the person to whom it is directed or by a person whose property rights or privileges may be violated” (Matter of Selesnick, 115 Misc 2d 993, 995 [Sup Ct, Westchester County 1982]). The mere fact that one is a target of investigation or that the information sought may prove adverse confers no special right or privilege to afford standing (supra).[3]
*265 However, petitioner has standing to challenge the subpoena insofar as it commands AT&T to produce documents in its possession actually belonging to Oncor. As to these documents, Oncor may and does contest the subpoena on the ground that Federal law has preempted State jurisdiction of the matter being investigated, as well as on grounds the subpoena is overbroad and lacks a factual basis.[4]
Specifically, Oncor contends the Attorney-General’s authority to investigate its business practices has been foreclosed by the Federal Communications Act of 1934 (47 USC § 151 et seq.) and the Federal Communications Commission’s (FCC) alleg *266 edly pervasive regulation of presubscription practices of inter-exchange carriers. This argument misses the mark. It may be that the Communications Act has supplanted State regulation of interexchange carriers with respect to claims based on State law (see, Nordlicht v New York Tel. Co., 799 F2d 859 [2d Cir 1986], cert denied 479 US 1055 [1987]; Ivy Broadcasting Co. v American Tel. & Tel. Co., 391 F2d 486 [2d Cir 1968]), although this conclusion is by no means inevitable (see generally, American Inmate Phone Sys. v US Sprint Communications Co., 787 F Supp 852 [ND 111 1992] [reviewing case law]). But even where State law has been deemed preempted by the Communications Act, it has been held — for claims sounding in tort or contract — that Federal common law may supply the rule of decision for determining the duties and liabilities of interexchange carriers (Nordlicht v New York Tel. Co., supra, at 862, 864; Ivy Broadcasting Co. v American Tel. & Tel. Co., supra, at 491), and that State courts enjoy concurrent jurisdiction over these Federal common-law claims (Nordlicht v New York Tel. Co., supra, at 865).
In this case, the Attorney-General issued his subpoena relying principally on the authority of Executive Law § 63 (12), a statute generally empowering the Attorney-General to take action against persons engaged in fraudulent or illegal business practices.[5] The remedial purpose of this section is not *267 limited solely to the injunction of repeated fraudulent or illegal acts as defined under State law. The statute itself expressly provides that the Attorney-General may seek an award of "restitution and damages”, and by its terms applies to the "carrying on of any fraudulent or illegal act or conduct”. Thus, it long has been recognized the statute affords the Attorney-General broad authority to enforce Federal as well as State law, unless State action in the area of Federal concern has been precluded utterly or Federal courts have exclusive jurisdiction of the matter. (See, People v Anderson, 137 AD2d 259, 267-268 [4th Dept 1988] [also noting that State has obligation to enforce Federal law under Supremacy Clause]; Matter of State of New York v Scottish-American Assn., 52 AD2d 528 [1st Dept 1976]; People v Calogero Corp., 47 AD2d 741, 742 [1st Dept 1975]; see also, Executive Law § 63 [12]; Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 18, Executive Law § 63 [12], 1995 Pocket Part, at 7-14.)
Oncor points to no provision of the Communications Act that expressly, or even implicitly, prohibits State enforcement of Federal common-law claims concerning the presubscription practices of interexchange carriers. Nor has it shown that any specific policy or regulation of the FCC would be offended by such enforcement. Even assuming the FCC’s policy of "equal access” might be impaired if the Attorney-General were permitted to assert violations of State law as a basis for proceeding in this matter, it does not follow the same could be said concerning violations of Federal law. Indeed, Oncor must concede that a private right of action may be premised on a breach of Federal common law even in an area that is regulated comprehensively, if the statutory scheme does not speak directly to the particular issues involved (see, Nordlicht v New York Tel. Co., supra, at 862 [quoting Ivy Broadcasting Co. v American Tel. & Tel. Co., supra, at 491]; see also, County of Oneida v Oneida Indian Nation, 470 US 226, 236-237 [1985]). Presumably, this right of action would include the right to proceed on behalf of similarly situated individuals as a class representative or private attorney general. The court discerns no reason in law or logic why the people’s Attorney-General should have less authority. Section 63 (12) empowers the Attorney-General to investigate repeated fraudulent or illegal *268 acts even if the , illegality flows from violations of Federal common law, and the Supreme Court properly may hear such claims. That enforcement ultimately might be preempted— thus making the investigation futile — is neither inevitable nor obvious (see, Anheuser-Busch, Inc. v Abrams, supra). The court concludes the Attorney-General has demonstrated sufficient authority under section 63 (12) to issue the challenged subpoena.
The court also concludes the Attorney-General has shown a factual basis for inquisitorial action. As the Appellate Division has stated, "[A]ll that is required is that the scope of the subpoena and the basis for its issuance be more than isolated or rare complaints by disgruntled persons” (Matter of Citizens Helping Achieve New Growth & Empl. — N. Y. v New York State Bd. of Elections, 201 AD2d 245, 247 [3d Dept 1994]). According to the affidavit of the Assistant Attorney-General, as of August 29, 1994, the Department of Law had received complaints from consumers almost every day "[f]or more than a year”, many particularly identifying "Oncor as the unexpected biller of high charges for calling card or collect calls from pay telephones.” In addition, the Department had received specific complaints from the New York State Metropolitan Transportation Authority, the Commack Union Free School District, and the Eastern Suffolk BOCES regarding actual or attempted unauthorized substitutions of Oncor as the primary interexchange carrier on pay telephones controlled by these bodies. Given the presumption of good faith that must be accorded the Attorney-General, this affidavit more than suffices to establish a factual basis for proceeding.
Finally, the subpoena is not overbroad. The affidavit establishes the relevant time period extends back to 1993; and the fact that the subpoena is not limited solely to information concerning unauthorized carrier changes on pay telephones does not make it defective. Because of the complaints lodged, the business practices and patterns of petitioner with respect to long distance carrier substitutions are relevant. The Attorney-General does not need to limit the scope of investigation to pay telephones alone.
Accordingly, the motion to quash the subpoena is denied.

. For example, Oncor allegedly sent telephone customers promotional checks containing fine print offers of service. Cashing one of these checks purportedly authorized Oncor to substitute itself as the customer’s long distance carrier.

. AT&T has filed a notice of appearance in this matter but takes no position on the present motion.

. Oncor’s reliance on Matter of Goldberg v Axelrod (104 AD2d 520 [3d Dept 1984]) is misplaced. Goldberg involved a subpoena of bank records "relating to specific accounts as well as any accounts in the name of * * * petitioner” (supra). There, the Court appears to have recognized some sort of limited confidential privilege in one’s own bank records that accorded the petitioner a justiciable interest in the subpoenaed material (see, supra ["It is *265 apparent that petitioner stands to be harmed by disclosure of financial matters which he does not want to disclose”] [emphasis supplied]; see generally, Matter of Norkin v Hoey, 181 AD2d 248, 250-256 [1st Dept 1992]). In any event, the Third Department has not followed Goldberg in subsequent decisions, and its continuing authority is doubtful (see, Matter of Congregation B’Nai Jonah v Kurianshy, 172 AD2d, at 37 [3d Dept 1991], supra; Matter of John Doe Corp. I v Blumenkopf, 118 AD2d 279, 282 [3d Dept 1986]; see also, Norkin v Hoey, supra, at 253).

. AT&T acquired these documents from Oncor during discovery in a case pending before the United States District Court for the District of Maryland, and the material is subject to that court’s protective order. Oncor also contends the District Court’s order precludes the Attorney-General from obtaining this material. Paragraph 7 of the order provides that protected documents "shall not be disclosed * * * to any other person except as authorized herein”. However, paragraph 14 expressly authorizes a receiving party like AT&T to "disclose information or documents subject to this Order in response to a subpoena from a non-party to this action” provided adequate written notice is given to the party who supplied the documents originally. Oncor does not dispute the adequacy of the notice furnished to it by AT&T; hence, the protective order furnishes no basis for quashing the subpoena.
While the court holds that Oncor has standing to the extent the subpoena requires Oncor’s own documents to be produced, this does not mean that Oncor may challenge the subpoena as being defective on its face for failing to comply with the notice requirement of CPLR 3101 (a) (4). The purpose of the notice requirement is obviously to apprise one who is not a party to a dispute of the circumstances and reasons that make it necessary for the person to disclose information in his or her possession. Presumably, such information would enable the nonparty to make a determination whether to challenge a subpoena or not. AT&T appears to have no obligation to resist the Attorney-General’s subpoena on Oncor’s behalf. Thus, inadequate notice or even complete lack of notice in a subpoena directed to AT&T can infringe no rights of Oncor, and the court will not entertain Oncor’s objection to the subpoena insofar as it is based on this ground. Further, it is highly doubtful that CPLR 3101 (a) (4) has any application to the present controversy since there was no action pending when the subpoena issued (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:l, at 11-13); in any event it is arguable that the notice included in the subpoena is sufficient.

. Executive Law § 63 (12) provides in relevant part:
"Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages * * * and the court may award the relief applied for or so much thereof as it may deem proper. The word 'fraud’ or 'fraudulent’ as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions. The term 'persistent fraud’ or 'illegality’ as used herein shall include continuance or carrying on of any fraudulent or illegal act or conduct. The term 'repeated’ as used herein shall include repetition of any separate and distinct fraudulent or illegal act, or conduct which affects more than one person.
"In connection with any such application, the attorney general is authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules.”
The Attorney-General also issued the subpoena on the authority of General Business Law article 22-A and Business Corporation Law article 11.
*267 In view of the court’s disposition of the matter, there is no need to discuss these other bases of jurisdiction.